TERREE A. BOWERS
United States Attorney
ROBERT L. BROSIO
Assistant United States Attorney
Chief, Criminal Division
MANUEL A. MEDRANO
Assistant United States Attorney
Chief, Asset Forfeiture Section
JOHN L. CARLTON
Assistant United States Attorney
Deputy Chief, Narcotics Section
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-0609

FILED
DEC - 9 1992
U.S. DISTRICT

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, Plaintiff, v. RAFAEL CARO-QUINTERO, et al., Defendants.

No. CR 87-422(G)-ER

GOVERNMENT'S PROFFER RE: WITNESS GUILLERMO FLORES; MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff, United States of America, through its counsel of record, hereby files, as requested by the court, a proffer regarding the anticipated testimony of witness Guillermo Flores. This proffer is based upon the attached Memorandum Of Points and Authorities, the files and records in this case, and such other

//

//

//

ENTER ON ICMS
DEC 14 1992
1992

1928

matter as may properly be considered by the court at the time of the hearing on this motion.

DATED: December 9, 1992.

Respectfully submitted,

TERREE A. BOWERS
United States Attorney

ROBERT L. BROSIO
Assistant United States Attorney
Chief, Criminal Division

MANUEL A. MEDRANO
Assistant United States Attorney
Chief, Asset Forfeiture Section

JOHN L. CARLTON
Assistant United States Attorney
Deputy Chief, Narcotics Section

## MEMORANDUM OF POINTS AND AUTHORITIES

## I

## PRELIMINARY STATEMENT

On December 3, 1992, the court ordered the government to submit a written proffer of the anticipated testimony of witness Guillermo Flores. Described below is a summary of the witness' anticipated testimony, as well as the government's theories of admissibility for any statements that the defense may endeavor to characterize as hearsay.

## II

## SUMMARY OF WITNESS GUILLERMO FLORES

Guillermo Flores is 29 years old and a Mexican national. He was member of the Mexican army from 1980 until early 1992.

Flores will testify that in approximately October, 1984, he and other soldiers traveled to the state of Jalisco to participate in one week of military olympics. Approximately fourteen squads from all over Mexico participated in the olympics. At the end of the olympics, Flores and other soldiers received orders directing all squads to participate in a marijuana eradication program called "Operation Jaguar." Flores was one of two lieutenants in charge of a squad; he and a second lieutenant reported to Captain Francisco Rodrigo Rodriguez-Galindo. Flores' squad was assigned to eradicate marijuana in the region of Mascota.

Flores' squad arrived in Mascota in early November, 1984. Flores' orders were to find and eradicate marijuana fields, arrest and question those involved, and attempt to ascertain the

ownership of the marijuana fields. Upon arrival in Mascota, Flores and his squad immediately discovered large fields of marijuana. The squad arrested workers in the fields and questioned them regarding ownership of the marijuana fields. The workers stated that the fields belonged to Ruben Zuno-Arce ("Zuno"). One of the individuals arrested and questioned was a local village mayor, who also stated that the land and marijuana fields belonged to Zuno.

Thereafter, Captain Rodriquez, Flores and several soldiers went to Zuno's ranch in Mascota to talk to Zuno. Flores advised Captain Rodriquez that Zuno was the brother-in-law of ex-president Luis Echeverria, and that the matter should be handled delicately. Zuno was not present when Flores and Rodriquez arrived, and Rodriquez ordered Flores to continue eradicating marijuana fields.

Flores took some soldiers and returned to the area around Mascota, and continued searching for and eradicating marijuana fields. The soldiers and Flores also continued arresting and questioning field workers, who uniformly continued to state that the fields belonged to Zuno. Approximately two days later, Flores returned to the town of Mascota and saw Captain Rodriguez speaking to Zuno. Zuno appeared tense. Afterwards Flores asked Captain Rodriguez why he had not yet arrested Zuno. Rodriguez said that he was awaiting orders, and was continuing to investigate the matter. The next day Flores observed the local village mayor, whom he had previously arrested, walking in Mascota. Flores again asked Captain Rodriguez why he had not

arrested Zuno. Rodriguez angrily responded that he had been ordered from higher up that there were to be no problems with Zuno. Rodriguez admonished Flores to just go about his business and he [Flores] also would receive a little gift. Rodriguez then showed Flores an unknown quantity of bills.

Later that same day, Flores saw Zuno with Captain Rodriguez at an airplane hangar. Zuno offered to Captain Rodriguez the use of Zuno's plane to see if there were anymore marijuana fields around Mascota. Rodriguez accepted Zuno's offer. This seemed odd to Flores because army personnel generally were only allowed to fly when authorized by Mexico City, and even then only in Mexican military planes. Thereafter, Rodriguez ordered Flores to take some men and continue to look for more marijuana fields.

While out eradicating more marijuana fields, the previously arrested field workers told Flores that the military in Mascota was on the traffickers' payroll. While eradicating a large marijuana field, Flores received radio orders from Captain Rodriguez to return immediately to Mascota because everyone was to return to Guadalajara. Flores complained to Rodriguez that he was not yet finished destroying a giant marijuana field, and that if he returned he would not be able to complete his mission. Captain Rodriguez angrily replied that that did not matter and that Flores was to return immediately. Flores left the area with his men and left numerous fields of marijuana behind.

Upon Flores' arrival in the town of Mascota, he saw Zuno talking and joking with Captain Rodriguez near a hangar. Zuno now looked relaxed. Thereafter, Flores and his entire squad were ordered to return to Guadalajara.

III

THE PROFFERED TESTIMONY IS RELEVANT AND CANNOT BE EXCLUDED ON HEARSAY GROUNDS

A. The Testimony Is Relevant

The indictment alleges that defendant Zuno was a member of the Guadalajara Narcotics Cartel. The Flores testimony helps to establish the nature of his membership. At the last trial, defendant Zuno argued that there was no substantial evidence that he was a trafficker, and therefore no reason to believe that he would have been involved with the cartel. Flores' testimony rebuts such an argument. A jury may infer from such testimony that defendant Zuno was a trafficker involved in the sale and distribution of vast amounts of marijuana. In conjunction with other evidence to be presented that defendant Zuno socialized with cartel leaders and directly participated in the conspiracy to kidnap Agent Camarena, the Flores testimony clarifies the nature of defendant Zuno's relationship to the cartel: he was a co-trafficker. To the extent that defendant Zuno can be seen as a cartel member, the Flores testimony serves to define the cartel's operations. Thus, such testimony is relevant.

B. The Testimony Cannot Be Excluded On Hearsay Grounds

1. The Workers Statements Are Admissions

The statements of the workers in the marijuana fields to Flores are non-hearsay in that they are admissions of a party-opponent. Fed. R. Evid. 801(d)(2)(D) provides in relevant part: "A statement is not hearsay if -- * * * (2) The statement is offered against a party and is * * * (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . ."

Here, Flores' orders were to find and eradicate marijuana fields, arrest and question those involved, and attempt to ascertain the ownership of the marijuana fields. Flores questioned workers in the fields as part of his official duties. In response to Flores' questions about who owned the marijuana fields, worker after worker responded "Zuno." The workers' statements were corroborated by the village mayor who also stated that Zuno owned the fields.

The workers' statements were made during the course of their employment. They were tending to the marijuana fields when Flores arrived; Flores arrested and questioned them there. The workers statements concern a matter within the scope of their employment, i.e., the identity of their employer.

"The fact of agency may not be proved by the alleged agent's extrajudicial statements." United States v. Jones 766 F.2d 412, 415 (9th Cir. 1985). Here, the agency is established by independent non-hearsay: Flores observed the workers tending to the marijuana fields, cultivating the soil and caring for the

plants. The worker's statements implicating defendant Zuno aside, there is no question that the workers were at the fields performing work.

Flores' observations and the workers' statements other than those identifying their employer, suffice to establish agency. In United States v. Jones, a victim making a ransom drop in response to defendant's extortion threats was allowed to testify about the statements made by two strangers who approached her and demanded the money. United States v. Jones, supra, 766 F.2d at 415 (9th Cir. 1985). The court found that "[t]his independent non-hearsay evidence strongly suggests that [the two strangers] had been in contact with the extortionist and were performing functions on his behalf, namely, the pick-up of the ransom money." Ibid. The court concluded that this constituted "'substantial' evidence indicating that [the two strangers] were agents of [defendant] and that their statements were made during the existence of their agencies concerning matters within the scope of their agencies." Ibid. The agents' statements were therefore properly admitted as admissions of a party-opponent, notwithstanding that the two strangers could not be located at the time of trial. Ibid.

Flores' testimony is no different than that admitted into evidence in Jones. The agency is established by Flores' observations of who was at the marijuana fields, and what he saw them doing. The worker's statements are therefore admissible as admissions of a party-opponent.

Indeed, even if the field workers' statements were made without personal knowledge of their accuracy, they are admissible. FDIC v. First Interstate Bank of Des Moines, 885 F.2d 423, 435 (8th Cir. 1989) (Employee's statement that another employee was stealing bonds admissible against employer sued for loss regardless of declarant's personal knowledge of accuracy of statement.) "As a general matter, employee statements made against the interest of an employer are representative admissions and are admissible [under] Fed. R. Evid. 801(d)(2)(D)." Id.

Thus, the workers' statements to Flores are admissible under the general proposition that: "Evidence of statements by an agent introduced in order to show the purpose for which he did an act or to show his knowledge or state of mind is admissible in favor of and against the principal under the rules relating to the introduction of evidence for this purpose. Statements by an agent are not excluded because made by an agent. If his knowledge or condition of mind or purpose is relevant to the cause of action which is being brought, either party may introduce evidence relevant to show this." Garford Trucking Corp v. Mann 163 F.2d 71, 71 (1st Cir. 1947), cert. denied, 68 S.Ct 112, 332 U.S. 810 (1947), citing Restatement of Agency §289, comment c.

Here, the workers' knowledge, condition of mind and purpose in tending to the marijuana fields are relevant in that they evidence defendant Zuno's involvement in the drug cartel. The

workers' statements reinforce other evidence that defendant Zuno was a member of the cartel.

2. The Workers' and Village Mayor's Statements Were Made Against Their Penal Interest And Are Therefore Admissible

The marijuana field workers' and village mayor's statements to Flores were made at the time of their respective arrests. The statements were against penal interests in that they showed knowledge of involvement in illegal activities. The statements are therefore admissible under Fed. R. Evid. 804(b), which provides in relevant part: "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: * * * (3) **Statement against interest.** A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true."

The workers and village mayor are unavailable as required by Fed. R. Evid 804(a)(5). They are absent from the trial, and the government has been unable to procure their attendance or testimony by process or other reasonable means. In United States v. Winn, 767 F.2d 527 (9th Cir. 1985), the court held that the government established unavailability of two Mexican foreign nationals who were released after interrogation, because the government had no reasonable means of locating the foreign nationals who had been returned to Mexico by the INS. Id. at

530. Indeed, the court held that because "the government had no addresses or any other information that would help locate [the witnesses] . . . it was reasonable for the government to make no effort to find the two aliens." Ibid, (emphasis added).

The Winn court held that the foreign nationals' statements were admissible, and did not violate the confrontation clause because the individuals were unavailable, and because the statements were not unreliable. Ibid. The court considered four factors to determine whether a statement is unreliable: "1) the statement contains an assertion of past fact; 2) the declarant did not have personal knowledge of the facts asserted; 3) there is a possibility of faulty recollection, and 4) the circumstances suggest that the declarant misrepresented defendant's role." Ibid, citing Dutton v. Evans, 400 U.S. 74, 88-89; 91 S.Ct. 210, 219-220 (1970).

Here, the government has no way to identify the marijuana field workers or the village mayor. They are therefore unavailable. Neither are their statements unreliable when judged by the above four-part test. None of the witnesses made statements about past facts. The workers who tended to the marijuana fields certainly knew for whom they were working, and it is unlikely that the small village mayor would not also know this information. Finally, there are no circumstances suggesting that worker after worker misrepresented defendant's role. They had no motive to do so, neither did the village mayor.

The declarant' statements to Flores were thus made under circumstances that guarantee their trustworthiness. The individuals were facing arrest by Mexican military personnel; they were interrogated as to their knowledge about the marijuana fields, and the extent of their own involvement in the fields. The workers knew who owned fields. Over and over the workers gave the same name to Flores: defendant Zuno. The village mayor also pointed to defendant Zuno as the owner of the marijuana fields. It stretches credibility to believe that everyone could have been wrong, and yet everyone pointed to the same person: defendant Zuno. These circumstances guarantee the trustworthiness of the statements. Flores should therefore be allowed to testify about what the workers told him at the time of their interrogation and arrest.

3. <u>The Statements Are Not Offered For The Truth Of The Matter Asserted</u>

The marijuana field workers' and village mayor's statements are not hearsay because they are not offered for the truth of the matter asserted. Whether defendant Zuno owned these particular marijuana fields is irrelevant. The fact that the workers <u>connected</u> defendant Zuno to owning vast marijuana fields is the important point.

The workers' and village mayor's statements have independent probative value to prove defendant Zuno's involvement in drug trafficking, regardless of whether defendant Zuno <u>in fact</u> owned these particular marijuana fields. That individuals repeatedly implicated defendant Zuno in the context of owning marijuana

fields has independent relevance, making the statements admissible. United States v. Candoli, 496 F.2d 496, 508 ("Because [unavailable witness'] statement was not admitted for the truth of the matter asserted, it was not hearsay. It was properly admitted by the district court if it was relevant.") These statements reinforce other evidence that defendant Zuno was a member of the drug cartel that blamed DEA for forcing the Mexican military to destroy the traffickers' marijuana fields. The drug cartel retaliated against DEA by kidnapping and murdering Agent Camarena. Relevance is therefore established.

Furthermore, because the statements are not admitted for the truth of the matter asserted, there is no confrontation clause problem. United States v. Kirk, 844 F.2d 660, 663 (9th Cir. 1988) ("Because the statements were not offered for the truth of the matter asserted, no confrontation clause violation occurred."); United States v. Castro, 887 F.2d 988, 1000 (9th Cir. 1989) (credit reports not hearsay because not introduced for truth of their contents, and there was therefore no violation of confrontation rights).

Moreover, regardless of the truth of the field worker's and village mayor's statements, the Mexican army had independent information connecting defendant Zuno to the marijuana fields. To stay in line with their mission, the army should have arrested defendant Zuno for his involvement in the marijuana fields. They did not. Instead, the army captain in charge of the mission reacted angrily when Flores pursued the issue, and later the captain told Flores that he, too, would be generously

compensated for 'going along.' Ultimately, the Mexican army shirked its mission by pulling out of Mascota, rather than arresting defendant Zuno and destroying the marijuana fields.

The deliberate inaction of the Mexican army, the reaction of the army captain to Flores' insistence that they destroy all of the marijuana fields, and Flores' observations of defendant Zuno with the captain all show that defendant Zuno exercised powerful influence to protect the marijuana fields. These facts evidence that defendant Zuno was a leader in the drug cartel who exercised influence at the highest levels to protect his vast marijuana fields.

In light of this independent evidence, the workers' and village mayor's statements should be admitted as non-hearsay, because they are not offered for the truth of the matter asserted. The statements are relevant regardless of truth, in that they are part of the web of evidence tying defendant Zuno to drug trafficking and the drug cartel.

///

///

///

///

///

///

///

///

For the foregoing reasons, the Court should allow Flores to testify as to the statements made by the marijuana field workers and the village mayor.

DATED: December 9, 1992.

Respectfully submitted

TERREE A. BOWERS
United States Attorney

ROBERT L. BROSIO
Assistant United States Attorney
Chief, Criminal Division

John L. Carlton

JOHN L. CARLTON
Assistant United States Attorney
Deputy Chief, Narcotics Section

Attorney for Plaintiff
UNITED STATES OF AMERICA

CERTIFICATE OF SERVICE

I, John L. Carlton, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by hand described in this Certificate was made; that on December 9, 1992, I hand delivered, in the above-entitled action, a copy of

GOVERNMENT'S PROFFER RE: WITNESS GUILLERMO FLORES: MEMORANDUM OF POINTS AND AUTHORITIES

addressed to SEE ATTACHED LIST

This Certificate is executed on December 9, 1992 at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

John Carlton

USA-40-12-5
(Rev. 08/12/83)

SERVICE LIST
CR 87-422(G)-ER

Attorneys for Defendant Ruben Zuno-Arce:

Edward M. Medvene
Mitchell, Silberberg & Knupp
11377 West Olympic Blvd.
Los Angeles, CA 90064

James E. Blancarte
Jeffer, Mangels, Butler & Marmaro
2121 Avenue of the Stars, 10th Floor
Los Angeles, CA 90067

Attorneys for Defendant Humbert Alvarez-Machain:

Alan Rubin
11835 West Olympic Blvd., #1235
Los Angeles, CA 90064

Paul L. Hoffman
ACLU Foundation
1616 Beverly Blvd., P.O. Box 26906
Los Angeles, CA 90016-9938