1  ROBERT C. BONNER
   United States Attorney
2  ROBERT L. BROSIO
   Assistant United States Attorney
3  Chief, Criminal Division
   ROEL CAMPOS
4  Assistant United States Attorney
   Major Narcotics Section
5      1400 United States Courthouse
       312 North Spring Street
6      Los Angeles, California 90012
       Telephone:  (213) 894-6682
7
   Attorneys for Plaintiff
8  United States of America

9              UNITED STATES DISTRICT COURT

10        FOR THE CENTRAL DISTRICT OF CALIFORNIA

11 UNITED STATES OF AMERICA,    )  No. CR 87-422(A)
                                )
12         Plaintiff,           )  MOTION FOR LOW-NUMBER ASSIGNMENT;
                                )  MEMORANDUM OF POINTS AND
13                              )  AUTHORITIES; DECLARATION;
           v.                   )  EXHIBITS
14                              )
   RAFAEL CARO-QUINTERO,        )
15   et al.,                    )
                                )
16         Defendants.          )
                                )
17 _____)

18      Plaintiff, the United States of America, by its counsel of

19 record, hereby files its motion for low-number assignment of this

20 case to Judge Rymer's court, where related case No. CR 87-919-PAR

21 is pending.  This motion is based on the attached memorandum of

22 points and authorities, declaration and exhibits, and the files

23 and records of this case.

24      DATED:    This _8th_ day of January, 1988.

25                          Respectfully submitted

26                          ROBERT C. BONNER
                            United States Attorney
27 /

28 RCC:bzb:jrr

ROBERT L. BROSIO
Assistant United States Attorney
Chief, Criminal Division


ROEL CAMPOS
Assistant United States Attorney
Major Narcotics Section

Attorneys for Plaintiff
United States of America

## DECLARATION OF ROEL CAMPOS

I, ROEL C. CAMPOS, hereby declare as follows:

1.    I am an Assistant United States Attorney for the Central District of California.  I, along with Assistant United States Attorney Jimmy Gurule, have been assigned to prosecute United States v. Raul Lopez, et al., CR 87-919-PAR, as well as the current case before the Magistrate for Post Indictment Arraignment, United States v. Rafael Caro-Quintero, et al., CR 87-422(A).

2.    As Assistant United States Attorneys, we have a duty under Local Rule 2, subsection 3, to advise the court of matters to which General Order 224 applies so that those matters can be assigned to the docket of the judge with the low-numbered case to which the new case is related.  (In this instance the number of the older case is higher because the original indictment in the Caro-Quintero case was under seal for several months.)

3.    I believe that the low-number rule applies to these matters, based on the objectives sought to be achieved by the rule.

4.    I am aware of several precedents in this district that support application of the rule:  United States v. Swann and McCollum Sr., No. CR 85-187 and United States v. Paul Terry Nichols, CR 87-711-DT.

1    5.    I learned from Assistant United States Attorney David
2  Katz that he obtained the tape of the hearing before Magistrate
3  McMahon in the <u>Swann and McCollum Sr.</u> case and prepared a
4  transcript of the hearing at which argument was had on the issue
5  of whether that case was "low-numerable" where the charges were
6  substantially identical but there were no common defendants.  (See
7  Exhibit A.)

8    6.    In the case of <u>United States v. Paul Terry Nichols, et</u>
9  <u>al.</u>, CR 87-711-DT, defendant Paul Terry Nichols and four
10 co-defendants were charged in a 31 count indictment alleging
11 violations of 21 U.S.C. § 848:  Conducting a Continuing Criminal
12 Enterprise; 21 U.S.C. § 846:  Conspiracy to Manufacture and
13 Distribute Methamphetamine; 21 U.S.C. § 841(a)(1):  Distribution
14 and Possession with Intent To Distribute Methamphetamine; 18
15 U.S.C. § 1952:  Travel In Aid of Racketeering, and 26 U.S.C.
16 § 7201:  Income Tax Evasion.  (Exhibit C).

17   7.    In <u>United States v. Patric Henry Stewart</u>, case number CR
18 87-709-DT, defendant Patric Henry Stewart was charged alone with
19 possession of an unregistered firearm, a .9 mm Uzi rifle, in
20 violation of 18 U.S.C. § 5861(d) (Exhibit D).  Defendant Patric
21 Henry Stewart was also charged in the <u>Paul Terry Nichols</u> case.
22 Consequently, the government filed a notice of related cases and
23 sought to low number the <u>Nichols</u> case; CR 87-711-DT, to the
24 <u>Stewart</u> case, CR 87-709-DT.  The government argued before District
25 Court Judge Dickran Tevrizian, the judge assigned the <u>Stewart</u>
26 case, that evidence seized pursuant to the execution of a search
27 warrant of defendant Stewart's residence would be introduced in
28

each case.   There was further reason to believe that the legality
of the search warrant would be challenged in each case.   In the
interests of judicial economy, i.e., to preclude arguing the
Fourth Amendment issue before two different district court judges,
the court held that low numbering was appropriate even though
there was not a majority of common defendants in the Nichols case.

I swear under penalty of perjury that the above statements are
true and correct.

DATED:    This  9th  day of January, 1988.


ROEL CAMPOS
Assistant United States Attorney
Major Narcotics Section

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

### ARGUMENT

A.  THE LOW NUMBER RULE

General Order 224, section 8.6.1 provides that when an indictment is filed concerning a defendant:

> "(1)   arising out of the same transaction or series of transactions;
>
> (2)   involving the same defendan; or
>
> (3)   for other reasons would entail a substantial duplication of labor if heard by a different judge"

the matter shall be assigned to the calendar of the judge having the low-numbered indictment (in this situation - the older case) subject to the reservation provided in paragraph 8.6.2.

It is clear that the Rule 8.6.1 is written in the disjunctive and that any of the three reasons under Rule 8.6.1. are grounds for "low numbering" a case.  Section 8.6.2. of General Order 224 provides that where the original indictment and the later filed indictment "does not have a majority of common defendants, this rule shall not apply."  (See Exhibit B).

The government first submits that Rule 8.6.2 only limits the second provision of Rule 8.6.1, but not subsections 1 and 3.  That was the finding of Magistrate McMahon in the Swann and McCollum case.  The basis for that conclusion is apparent.  Subsections 1 and 3 are intended for the purpose of promoting judicial economy and preventing the potential for inconsistent rulings within the district over identical issues.

Rule 8.6.2, like subsection 8.6.1, subsection (2), refers to the number of defendants. Promoting judicial economy is not the purpose of either of those provisions. Instead, the General Order seeks to avoid a completely different situation, as presented to Magistrate McMahon in the Swann and McCollum case. (See Ex. A, p. 8).

For example, assume defendant robbed bank A and bank B. In robbing bank B, defendant 1 obtains the assistance of defendants 2 and 3. Assume also that because of the earlier development of evidence, the government first filed an indictment for the robbery of Bank A. Further, while the prosecution for bank A is still pending, the government filed the second indictment for the robbery of bank B. In that hypothetical situation, Rule 8.6.2 appropriately prevents the assignment of the bank B robbery case to the first court.

In that situation there is no gain or efficiency to the system to assign the second case to the first court. That is the sole purpose of Rule 8.6.2. It was never intended to undermine the efficiencies sought under subsections 1 and 3 of Rule 8.6.1. The efficiencies sought under those subsections are not dependent upon the number of common defendants. Therefore, as Magistrate McMahon and, more recently Judge Tevrizian in the Nichols case, concluded the only logical interpretation of Rule 8.6.2. is that it only applies to subsection (2) of Rule 8.6.1.

In the <u>Caro-Quintero</u> case defendant Raul Lopez-Alvarez is a common defendant in both cases. As discussed below, there would be "substantial duplication of labor" if the second case is not assigned to Judge Rymer, as provided under subsection 3 of Rule 8.6.1. Moreover, the Court of Appeals for the Ninth Circuit has held that local district court decisions pertaining to local rules should be accorded extreme deference. <u>United States v. Mouzin</u>, 785 F.2d 682 (9th Cir. 1986) (Local rules should be interpreted by local judges [U.S. Dist. Ct. Rules C.D. Cal., Rule 2.6.2] and will not be overruled by Court of Appeals unless contrary to Court of Appeals orders or the Constitution).

B.  <u>The Caro-Quintero Case Should Be Low Numbered To Avoid</u>
    <u>The Duplication of Labor Created If Heard by Another</u>
    <u>Judge.</u>

In the <u>Lopez-Alvarez</u> case the government intends to introduce at trial the taped recordings of five undercover meetings wherein defendant Lopez discussed the murder-for-hire of a Special Agent with the United States Customs Service, as well as numerous related taped telephone conversations. In addition, the English transcripts of the conversations in Spanish will be introduced into evidence. The combined taped recordings are approximately six hours in length and constitute approximately 500 pages of transcripts. Moreover, the government will likely seek to introduce the post-arrest statements of defendant Lopez.

- 8 -

It should be emphasized that during these undercover meetings, defendant Lopez further discussed his role in the abduction, interrogation, torture and murder of Special Agent Enrique Camarena.  Consequently, the undercover tapes will also be introduced at trial in the Caro-Quintero case.  Likewise, during Lopez' post-arrest statements he made certain admissions that the government maintains are admissible at trial in both the Lopez and the Caro-Quintero case.  Consequently, the admissibility of the undercover tapes, transcripts and post-arrest statements are issues that will be raised in both cases.

It is furthermore anticipated that issues relating to the disclosure of the confidential informant, entrapment, outrageous government misconduct and the admissiblity of similar bad acts under Rule 404(b) will be raised in both cases.  As related to the issue of the disclosure of the confidential informant, there remain serious safety considerations regarding the disclosure and production of the informant.  Assigning the cases to different judges could potentially result in having to disclose the informant twice for in camera Ordonez examinations by the court to determine whether disclosure of the informant is material and helpful to the defense.  Consequently, in addition to enhancing the interests of judicial economy and avoiding the potential of inconsistent court rulings, assigning the cases to the same judge would preclude having to disclose the informant twice for in camera examinations.  Finally, assigning the cases to the same court would avoid calendering problems between different courts.

- 9 -

Exhibit A

Exhibit A

( A )

TG:              ATTORNEY TONY GLASSMAN

DK:              ASSISTANT UNITED STATES ATTORNEY DAVID A. KATZ

THE COURT:    MAGISTRATE JAMES W. MCMAHON


[Appearances of Counsel]

TG:              The purpose of my appearance this morning is
simply to inform the court that I believe that the
notice of request for  low-number treatment of this
case back to Judge Real is not well taken, for the
simple reason that under Rule 8.6.2, which your Honor
reviewed earlier this morning, it would be
inappropriate for the reason that Mr. Swann and Mr.
McCollum Sr. are the only defendants named in the
indictment before this court, namely, CR 85-187, and
the earlier indictment, that ultimately was assigned to
Judge Real, had three defendants, or a majority of the
defendants in the related case:  Mr. Russell, Mr.
McCollum, Jr. and Mr. Porzio.  That original case, in
addition, was, as I understand it, originally assigned
to Judge Whelan, who was then unable to take the pleas
tendered by the three defendants because of illness,
and Judge Real took pleas and sentenced those three
defendants.

- 5 -

EXHIBIT A

TG:     ATTORNEY GLASSMAN

DK:     ASSISTANT UNITED STATES ATTORNEY KATZ

DK:          Your Honor, I would just like a chance to be heard
        on this matter.

                    *         *         *

             Under the low number rule, first of all, we're
        referring of course to General Order 224.  And in the
        local criminal rules that would be Rule 2, Section 2.3,
        it talks about notice of related matters in criminal
        cases, and it says the United States Attorney shall
        have the duty to advise the court or arraignment
        magistrate of any matter to which paragraph 8.6.1
        through 8.6.4 of Gen. Order 224 shall apply.  I believe
        that Section 8.6.2 is a limitation on 8.6.1, the second
        section there.  The court has the rule in front of it.

THE COURT:   Give me the facts, there's a case pending in front
        of . . .

DK:          This is essentially a substantially identical case
        to the earlier one on which Chief Judge Real took all
        the pleas and imposed all the sentences.  The only
        proceeding had before Judge Whelan, the only one, was
        the trial setting.  After that, there were six

                          -  6  -

TG:   ATTORNEY GLASSMAN

DK:   ASSISTANT UNITED STATES ATTORNEY KATZ

different hearings and proceedings in front of Chief
Judge Real.

Why is this substantially identical?  It is
substantially identical and therefore falls under the
first provision talking about where an indictment is
filed concerning a defendant arising out of the same
transaction or series of transactions.  Essentially
what occurred was that there were three people in the
earlier case, the case was called <u>United States v.
James Dean McCollum Jr.</u>  That was the son of James Dean
McCollum Sr. who stands before this Court now.  In the
course of that case the defendants James Dean McCollum
Jr., Richard Russell, and a Leonard Porzio cooperated
with the government and they basically said, "Yes, I
was involved in this mail fraud scheme, and, yes, I was
involved in these counts, but the people who were
pulling the strings were the two defendants here Delmar
Swann and McCollum Sr.  So basically what we have here
are 17 counts which are identical.  I've made a few
language changes.  Every assistant expresses himself in
his own way, but except for stylistic changes, this is
the identical indictment that was before Chief Judge
Real.

- 7 -   EXHIBIT A

TG:     ATTORNEY GLASSMAN

DK:     ASSISTANT UNITED STATES ATTORNEY KATZ


        I believe that the limitation of 8.6.2 is a
limitation on the second provision which talks about
where an indictment is filed involving the same
defendant.  In that situation where you say "look this
defendant robbed bank A and he also robbed bank B and
when he robbed bank B, we want to low-number that case,
and involved in that case were Mr. X and Y as well as
this first fellow," then I believe we run into the
problem . . .


MM:     That's what Cornell Price's situation was [earlier
that same morning, where a low-number request was
denied,] a string of bank robberies.


DK:     Then we run into the problem with 8.6.2.  The
problem is . . .


MM:     So you're saying 8.6.2 really limits 8.6.1
subsection 2, but not subsection 1 and 3.


DK:     Precisely, here we have identical cases.  Chief
Judge Real became familiar with this case inside and


                        -  8  -

EXHIBIT A

TG:     ATTORNEY GLASSMAN

DK:     ASSISTANT UNITED STATES ATTORNEY KATZ


        out, the identical case that is now before the court,
        and the only thing new are two obstruction of justice
        counts and they involve his attempt to obstruct justice
        in attempting to influence the testimony of Richard
        Russell about his, defendant Swann's, participation in
        this identical scheme.  This is clearly an
        appropriately low-numbered case.


        Then the question becomes, why not low-number it
        to Judge Whelan?  Normally, we would, but we might as
        well low-number it in that case to almost anybody in
        the building.  The point of this is to avoid
        unnecessary duplication of labor.


THE     Judge Whelan is still sick?
COURT:


DK:     Judge Whelan is still sick, and he knows nothing
        about this case.  There was one hearing, the trial
        setting, before Judge Whelan.  Then, on January 18,
        1985 we took one plea in front of Judge Real.


                        -  9  -



TG:  ATTORNEY GLASSMAN

DK:  ASSISTANT UNITED STATES ATTORNEY KATZ

On January 21, 1985 we took another plea in front of Judge Real. On February 4, 1985 we took a third plea, and we then had three separate sentencings and the last sentencing was one week ago today.

I'm repeating myself now, but Chief Judge Real became intimately familiar with this case. This is just the sort of situation the low number rule was concerned with, unnecessary duplication of labor.

TG:  The problem is, as counsel has conceded, this matter was originally assigned under the language of the rule to Judge Whelan, who is not, as I understand it, disabled; I don't know whether he's among those to whom you are sending cases this morning. Beyond that, we have two separate felony counts charged against Mr. Swann of obstruction of justice. These have never been before Judge Real, and hopefully will never be before him because, appropriately, when you review those facts along with 8.6.2. this matter must be assigned from the wheel to whichever judge comes out. It's not an appropriate case for a low-number assignment.

- 10 -

TG:      ATTORNEY GLASSMAN

DK:      ASSISTANT UNITED STATES ATTORNEY KATZ

THE          I, having reviewed 8.6.1 and 8.6.2, I read 8.6.2
COURT:   as Mr. Katz suggests, limiting subsection 2 of 8.6.1.
It makes no sense for it to limit subsection 1 or
subsection 3.  Therefore, I read the sense of 8.6.1 and
8.6.2 to be that this case should be assigned to Judge
Real.  I will so intend and the record will reflect
your remarks for whatever purpose and effect you intend
them to be.

TG:          I just wanted to note our objection to the
record.  Counsel will review that at the appropriate
time.

THE          Your objection is noted.
COURT:

                    *          *          *

                    [Arraignment]

THE          All right, this case is assigned to Chief Judge
COURT:   Real pursuant to 8.6.1. and 8.6.2 of General Order No.
224 and the matter is set before Judge Real at 11:30
this morning, Courtroom 8 on the second floor . . . .

                    - 11 -

EXHIBIT A

TG:      ATTORNEY GLASSMAN

DK:      ASSISTANT UNITED STATES ATTORNEY


TG:          Would your Honor like me to accompany [Mr. Swann]
         and make the appearance for him specially?


THE          If you have a long-standing relationship with this
COURT:   gentleman, you can go down there and make sure that
         he's represented.


TG:          Well, I'll be more than happy to inform Judge Real
         of the position I have taken before your Honor.


THE          Feel free.
COURT:

- 12 -

EXHIBIT A

Exhibit B

Exhibit B

( B )

## 8.6  RELATED CASE TRANSFERS - CRIMINAL CASES

### 8.6.1     RELATED INDICTMENTS

Where an information or indictment is filed concerning a defendant (1) arising out of the same transaction or series of transactions (2) involving the same defendant or (3) for other reasons would entail substantial duplication of labor if heard by a different judge, the matter shall be assigned to the calendar of the judge having the low-numbered indictment or information subject to the reservation provided in Paragraph 8.6.2.

#### 8.6.1.1  REFERENCE TO CRIMINAL DUTY JUDGE - If the judge to whom the case is assigned pursuant to paragraph 8.6.1 feels the case is not a re-related indictment or information the matter shall be referred to the Criminal Duty Judge for final determination of the nature of the questionable assignment.

### 8.6.2  MULTIPLE DEFENDANTS

Where the original information or indictment and the later filed information or indictment does not have a majority of common defendants this rule shall not apply.

EXHIBIT D

Exhibit C

Exhibit C

(c)

1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8            FOR THE CENTRAL DISTRICT OF CALIFORNIA

9                  June 1987        Grand Jury

10   UNITED STATES OF AMERICA,        )  NO. CR  87-711
                                      )
11              Plaintiff,            )  I N D I C T M E N T
                                      )
12          v.                        )  [21 U.S.C. § 848:
                                      )  Continuing Criminal
13   PAUL TERRY NICHOLS,              )  Enterprise; 21 U.S.C. § 846:
     KAREN NICHOLS,                   )  Conspiracy To Manufacture
14   PATRIC HENRY STEWART,            )  and Distribute a Controlled
     MICHAEL FRANCIS BREOR and        )  Substance; 21 U.S.C.
15   CHRISTEL BREOR,                  )  § 841(a)(1):  Manufacture,
                                      )  Possession With Intent
16                                    )  To Distribute and
                                      )  Distribution of A
17              Defendants.           )  Controlled Substance;
                                      )  21 U.S.C. § 853:  Criminal
18                                    )  Forfeiture; 18 U.S.C. § 1952:
                                      )  Interstate Travel In Aid
19                                    )  of Racketeering;
                                      )  and 26 U.S.C. § 7201:
20                                    )  Income Tax Evasion]
                                      )
21   _____)

22        The Grand Jury charges:

23                          COUNT ONE

24                    [21 U.S.C. § 848]

25        Beginning in or about 1982 and continuing through 1985, in

26   San Bernardino County, within the Central District of California,

27   and elsewhere, defendant PAUL TERRY NICHOLS did engage in a

28   JG:bzb

1 criminal enterprise in that he unlawfully, knowingly and

2 intentionally violated §§ 841(a)(1), and 846 of Title 21, United

3 States Code, which violations were part of a continuing series of

4 violations which included, but are not limited to those alleged

5 in Counts Two, Five, Six, Seven, Nine, Eleven, Twelve, Fourteen,

6 Fifteen, Sixteen, Seventeen, Eighteen, Twenty, Twenty-One,

7 Twenty-Two, Twenty-Three, Twenty-Four and Twenty-Five.

8    These violations were undertaken by defendant PAUL TERRY

9 NICHOLS in concert with at least five other persons with respect

10 to whom defendant PAUL TERRY NICHOLS occupied a position of

11 organizer, supervisor, and manager and from which continuing

12 series of violations defendant PAUL TERRY NICHOLS obtained

13 substantial income and resources to which the United States is

14 entitled to forfeiture, including all profits obtained by

15 defendant PAUL TERRY NICHOLS from engaging in the continuing

16 criminal enterprise, and any of his interest in, claim against,

17 or property or contractual rights of any kind which afforded

18 defendant PAUL TERRY NICHOLS a source of influence over the

19 continuing criminal enterprise, including but not limited to:

20    1)   The residence and premises located at 9525

21       Loma Vista, Apple Valley, California, lot 11,

22       tract 6779, as per plat recorded in book 91 of

23       maps, pages 68-73, records of San Bernardino

24       County, California;

25    2)   Furniture, appliances, television, stereo

26       equipment and furnishings at 9525 Loma Vista,

27       Apple Valley, California;

28
                        -   2   -

3).  All assets of VALLEY HOME VIDEO, 26248

National Trail Highway, Helendale, California;

4)  All assets of VALLEY HOME VIDEO, 32524 Old

Woman Springs Road, Lucerne Valley, California;

5)  1984 Ford F250XL Pickup truck, vehicle

identification number 1FTHF25LXEPA49415;

6)  Campershell, Series F250, vehicle

identification number 2074-8300;

7)  1984 Honda 200ES ATC, vehicle

identification number JH3TBO555EC387083;

8)  1978 Ford Bronco Custom 4x4, vehicle

identification number U15HLBA3231;

9)  1986 Mazda B2000SESP Pickup truck, vehicle

identification number JM2UF1116GO629183;

10)  1983 Honda ATC 110, vehicle identification

number JH3TBO202DC431080;

11)  John Deere Tractor #3T80UJ, vehicle

identification number CH3043D007617.

All in violation of Title 21, United States Code, Section

848(a) and 853.

- 3 -

COUNT TWO

[21 U.S.C. §§ 846; 853]

A. Objects of the Conspiracy

Beginning in or about 1982 and continuing through 1985, in San Bernardino County, within the Central District of California and elsewhere, defendants PAUL TERRY NICHOLS, KAREN NICHOLS, PATRIC HENRY STEWART, MICHAEL FRANCIS BREOR and CHRISTEL BREOR and other co-conspirators both known and unknown to the grand jury, unlawfully, willfully and knowingly combined, conspired and agreed to commit offenses against the United States in violation of Title 21, United States Code, Section 846, namely:

      1.   To knowingly and intentionally manufacture methamphetamine, a Schedule II narcotic drug controlled substance, with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1);

      2.   To knowingly and intentionally distribute and possess with intent to distribute methamphetamine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

B. Means of the Conspiracy

The objects of the conspiracy were to be accomplished as follows:

- 4 -

Beginning in or about 1982 and continuing

through 1985, defendants PAUL TERRY NICHOLS,

KAREN NICHOLS, PATRIC HENRY STEWART, MICHAEL

FRANCIS BREOR and CHRISTEL BREOR and others

both known and unknown to the grand jury,

organized and put into operation an enterprise

and scheme to manufacture methamphetamine and

possess with intent to distribute and

distribute methamphetamine for profit.

1. Defendant PAUL TERRY NICHOLS manufactured and distributed methamphetamine. Defendant PAUL TERRY NICHOLS further sold the formula for the manufacturing of methamphetamine to other individuals and taught them how to manufacture methamphetamine.

2. Defendant PATRIC HENRY STEWART distributed methamphetamine for defendant PAUL TERRY NICHOLS. Defendant PATRIC HENRY STEWART further manufactured methamphetamine.

3. Defendant MICHAEL FRANCIS BREOR distributed methamphetamine and purchased chemicals and equipment for the manufacturing of methamphetamine

4. Defendant KAREN NICHOLS picked up quantities of methamphetamine from methamphetamine manufacturing lab sites and delivered the methamphetamine for distribution.

5. Defendant CHRISTEL BREOR purchased chemicals to manufacture methamphetamine and delivered money which constituted the proceeds from the distribution of methamphetamine.

- 5 -

C.   Overt Acts

In furtherance of the conspiracy and to effectuate the objects thereof, defendants PAUL TERRY NICHOLS, KAREN NICHOLS, PATRIC HENRY STEWART, MICHAEL FRANCIS BREOR and CHRISTEL BREOR, committed various overt acts within the Central District of California and elsewhere, including but not limited to the following:

1.   In or about August 1982, defendant PAUL TERRY NICHOLS manufactured methamphetamine.

2.   In or about August 1982, defendant PATRIC HENRY STEWART distributed approximately two ounces of methamphetamine.

3.   In or about September 1982, defendants PATRIC HENRY STEWART and MICHAEL FRANCIS BREOR distributed approximately two ounces of methamphetamine.

4.   Between in or about September and November 1982, defendant MICHAEL FRANCIS BREOR distributed approximately twelve ounces of methamphetamine.

5.   In or about November 1982, defendant PAUL TERRY NICHOLS manufactured approximately four pounds of methamphetamine.

6.   In or about November 1982, defendants PAUL TERRY NICHOLS and PATRIC HENRY STEWART distributed methamphetamine.

7.   In or about November 1982, defendant PAUL TERRY NICHOLS sold the formula for the manufacturing of methamphetamine.

- 6 -

8. In or about November 1982, defendant PAUL TERRY NICHOLS gave another individual approximately $10,000 to purchase equipment and chemicals to manufacture methamphetamine.

9. In or about November 1982, defendant PATRIC HENRY STEWART purchased chemicals and equipment for the manufacturing of methamphetamine.

10. In or about December 1982, defendant PATRIC HENRY STEWART traveled to Stark, Minnesota from Apple Valley, California.

11. In or about December 1982, defendant PATRIC HENRY STEWART manufactured approximately two pounds of methamphetamine in Minnesota.

12. In or about December 1982, defendant PAUL TERRY NICHOLS distributed approximately one ounce of methamphetamine.

13. In or about January 1983, defendant PAUL TERRY NICHOLS manufactured approximately 40 ounces of methamphetamine.

14. In or about January 1983, defendant PAUL TERRY NICHOLS distributed approximately 42 ounces of methamphetamine.

15. In or about January 1983, defendant PATRIC HENRY STEWART distributed approximately 24 ounces of methamphetamine.

- 7 -

16. In or about February 1983, defendant PAUL TERRY NICHOLS manufactured approximately 80 ounces of methamphetamine.

17. In or about February 1983, defendant PAUL TERRY NICHOLS distributed approximately 80 ounces of methamphetamine.

18. In or about February 1983, defendant PATRIC HENRY STEWART possessed with intent to distribute approximately four (4) pounds of methamphetamine.

19. In or about February 1983, defendant PAUL TERRY NICHOLS possessed with intent to distribute approximately two (2) pounds of methamphetamine.

20. In or about March 1983, defendant PAUL TERRY NICHOLS manufactured approximately 120 ounces of methamphetamine.

21. In or about March 1983, defendant PAUL TERRY NICHOLS distributed approximately 120 ounces of methamphetamine.

22. In or about March 1983, defendant PAUL TERRY NICHOLS taught a second individual how to manufacture methamphetamine.

23. In or about June 1983, defendants PAUL TERRY NICHOLS and PATRIC HENRY STEWART distributed approximately 18 ounces of methamphetamine.

- 8 -

24. In or about June 1983, defendant PATRIC HENRY STEWART traveled from Apple Valley, California to Maplewood, Minnesota.

25. In or about June 1983, defendant PATRIC HENRY STEWART received approximately four (4) pounds of methamphetamine.

26. In or about July 1983, defendant PAUL TERRY NICHOLS manufactured methamphetamine.

27. In or about October 1983, defendant PAUL TERRY NICHOLS arranged for the purchase of chemicals and equipment for the manufacturing of methamphetamine.

28. In or about October 1983, defendant PAUL TERRY NICHOLS taught a third individual how to manufacture methamphetamine.

29. In or about October 1983, defendant PAUL TERRY NICHOLS manufactured over 100 ounces of methamphetamine.

30. In or about October 1983, defendants PAUL TERRY NICHOLS, KAREN NICHOLS and PATRIC HENRY STEWART possessed with intent to distribute over 100 ounces of methamphetamine.

31. In or about the latter part of 1983, defendant Christel Breor purchased chemicals and equipment for the manufacturing of methamphetamine.

- 9 -

32. In or about January 1984, defendant PATRIC HENRY STEWART and MICHAEL FRANCIS BREOR purchased chemicals for the manufacturing of methamphetamine.

33. In or about January 1984, defendant PAUL TERRY NICHOLS manufactured approximately approximately 700 ounces of methamphetamine.

34. In or about January 1984, defendants PAUL TERRY NICHOLS, KAREN NICHOLS and PATRIC HENRY STEWART possessed with intent to distribute methamphetamine.

35. In or about February 1984, defendant MICHAEL FRANCIS BREOR gave approximately $10,000 to another individual.

36. In or about February 1984, defendant CHRISTEL BREOR possessed approximately $150,000 which were the proceeds from the sale of methamphetamine.

37. In or about March 1984, defendant PAUL TERRY NICHOLS manufactured approximately 1,200 ounces of methamphetamine.

38. In or about March 1984, defendant PAUL TERRY NICHOLS possessed with intent to distribute approximately 1,200 ounces of methamphetamine.

39. In or about March 1984, defendant KAREN NICHOLS possessed with intent to distribute approximately 400 ounces of methamphetamine.

40. In or about July 1984, defendant PATRIC
HENRY STEWART purchased chemicals and equipment
for the manufacturing of methamphetamine.

41. Between in or about May 1984 and July
1985, defendant MICHAEL FRANCIS BREOR purchased
approximately 50 gallons of N-Methylformamide
for the manufacturing of methamphetamine.

The Grand Jury further alleges that the following property
which constitutes the proceeds of, or was derived from narcotics
trafficking is subject to forfeiture pursuant to Title 21, United
States Code, Section 853(a)(1):

Defendant Paul Terry Nichols·

1)  The residence and premises located at 9525
Loma Vista, Apple Valley, California, lot 11,
tract 6779, as per plat recorded in book 91 of
maps, pages 68-73, records of San Bernardino
County, California;

2)  Furniture, appliances, television, stereo
equipment and furnishings at 9525 Loma Vista,
Apple Valley, California;

3)  All assets of VALLEY HOME VIDEO, 26248
National Trail Highway, Helendale, California;

4)  All assets of VALLEY HOME VIDEO, 32524 Old
Woman Springs Road, Lucerne Valley, California;

5)  1984 Ford F250XL Pickup truck, vehicle
identification number 1FTHF25LXEPA49415;

- 11 -

6) Campershell, Series F250, vehicle identification number 2074-8300;

7) 1984 Honda 200ES ATC, vehicle identification number JH3TBO555EC387083;

8) 1978 Ford Bronco Custom 4x4, vehicle identification number U15HLBA3231;

9) 1986 Mazda B2000SESP Pickup truck, vehicle identification number JM2UF1116GO629183;

10) 1983 Honda ATC 110, vehicle identification number JH3TBO202DC431080;

11) John Deere Tractor #3T80UJ, vehicle identification number CH3043D007617.

Defendant Patric Henry Stewart

1) Furniture, appliances, television, stereo equipment and furnishings at 26275 Laramie Road, Apple Valley, California;

2) 1959 Chevrolet Corvette, vehicle identification number J595102531;

3) 1979 Cadillac Fleetwood Limousine, vehicle identification number 6F33S99188049;

4) 1941 Packard 120, vehicle identification number I492-7798;

5) 1984 Sleek Craft, 24 foot Day Cruiser and trailer, vehicle identification number SLEE3418M83H;

6) 1975 Pontiac Grand Villa Brougham, vehicle identification number 2R67S5P231087;

7)  1970 Triumph GT6+, vehicle identification number KC77749L;

8)  1967 Chevrolet Camaro, vehicle identification number 124677L159483;

9)  1929 International Tudor truck, vehicle identification number 175403;

10)  1930 Ford Model A, vehicle identification number A342709;

11)  1983 Ford F3500XL 4x4 Pickup truck, vehicle identification number 2FTJW36LXDCB10462;

12)  Craftsman mini-tractor, vehicle identification number 3543S01027;

13)  1982 Yamaha motorcycle, vehicle identification number 3Y0102695;

14)  1983 Honda ATC 200X, vehicle identification number JM3TBO52XDC300752;

15)  1983 Honda FL250 Odyssey Sandbuggy, vehicle identification number JH3TBO0408DC609006;

16)  1986 Honda Goldwing motorcycle, vehicle identification number GL1-2014855.

17)  1984 Big Tex Flatbed trailer, vehicle identification number 16VPW162BE2G01090.

-  13  -

Defendant Michael Francis Breor

1) The residence and premises located at 9525 Corto Road, Apple Valley, California, lot 43, tract 6778, as per plat recorded in book 91 of maps, pages 77-83, records of San Bernardino County;

2) Furniture, appliances, television, stereo equipment and furnishings at 9525 Corto Road, Apple Valley, California;

3) 1985 Ford Bronco II, 4x4, vehicle identification number 1FMCU14SXFUD31152;

4) Kawasaki 550 Jet Ski, vehicle identification number KAW25923K485;

5) Kawasaki 550 Jet Ski, vehicle identification number KAW25972K485;

6) Zieman Trailer, vehicle identification number 1ZCS10012FW236501:

7) 1984 Yamaha 200 ATC, vehicle identification number JY452H001F0005597;

8) 1984 Honda ATC 200ES, vehicle identification number JH3T30551EC515934;

9) 1985 Dana Classic Day Cruiser, vehicle identification number DNX22114M85K;

10) Boat trailer, vehicle identification number 1H9BT2224F105191:

11) 1985 Suzuki 125 ATC, vehicle identification JSATF41A1D2113387.

- 14 -

12)   1984 Sleek Craft, 24 foot Day Cruiser and trailer,

vehicle identification number SLEE3418M83H;

COUNT THREE

[21 U.S.C. § 841(a)(1)]

In or about September 1982, in San Bernardino County, within the Central District of California, defendants PATRIC HENRY STEWART and MICHAEL FRANCIS BREOR, knowingly and intentionally distributed a quantity of methamphetamine, that is, approximately two (2) ounces of methamphetamine, a Schedule II narcotic drug controlled substance.

-  16  -

1 | COUNT FOUR

2 | [21 U.S.C. § 841(a)(1)]

3 |     In or about October 1982, in San Bernardino County, within

4 | the Central District of California, defendant MICHAEL FRANCIS

5 | BREOR, knowingly and intentionally distributed a quantity of

6 | methamphetamine, that is, over two (2) ounces of methamphetamine,

7 | a Schedule II narcotic drug controlled substance.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 | - 17 -

28

COUNT FIVE

[21 U.S.C. § 841(a)(1)]

In or about November 1982, in San Bernardino County, within the Central District of California, defendant PAUL TERRY NICHOLS, knowingly and intentionally manufactured a quantity of methamphetamine, that is, approximately two (2) pounds of methamphetamine, a Schedule II narcotic drug controlled substance.

COUNT SIX

[21 U.S.C. § 841(a)(1)]

In or about November 1982, in San Bernardino County, within the Central District of California, defendant PAUL TERRY NICHOLS, knowingly and intentionally manufactured a quantity of methamphetamine, that is, approximately two pounds of methamphetamine, a Schedule II narcotic drug controlled substance.

- 19 -

## COUNT SEVEN

[21 U.S.C. § 841(a)(1)]

In or about November 1982, in San Bernardino County, within the Central District of California, defendants PAUL TERRY NICHOLS and PATRIC HENRY STEWART knowingly and intentionally distributed a quantity of methamphetamine, that is, approximately two (2) pounds of methamphetamine, a Schedule II narcotic drug controlled substance.

COUNT EIGHT

[18 U.S.C. § 1952]

In or about December 1982, defendant PATRIC HENRY STEWART traveled in interstate commerce between Apple Valley, California, San Bernardino County, in the Central District of California, and Stark, Minnesota, with the intent to promote, manage, establish, carry on and facilitate an unlawful activity, namely the manufacturing of methamphetamine and thereafter promoted and facilitated that unlawful activity.

- 21 -

COUNT NINE

[21 U.S.C. § 841(a)(1)]

In or about January 1983, in San Bernardino County, within the Central District of California, defendant PAUL TERRY NICHOLS, knowingly and intentionally manufactured a quantity of methamphetamine, that is, approximately forty (40) ounces of methamphetamine, a Schedule II narcotic drug controlled substance.

- 22 -

COUNT TEN

[21 U.S.C. § 841(a)(1)]

In or about January 1983, in San Bernardino County, within the Central District of California, defendant PATRIC HENRY STEWART, knowingly and intentionally distributed a quantity of methamphetamine, that is, approximately twenty-four (24) ounces of methamphetamine, a Schedule II narcotic controlled drug substance.

COUNT ELEVEN

[21 U.S.C. § 841(a)(1)]

In or about February 1983, in San Bernardino County, within the Central District of California, defendant PAUL TERRY NICHOLS, knowingly and intentionally manufactured a quantity of methamphetamine, that is, approximately forty (40) ounces of methamphetamine, a Schedule II narcotic drug controlled substance.

- 24 -

COUNT TWELVE

[21 U.S.C. § 841(a)(1)]

In or about February 1983, in San Bernardino County, within the Central District of California, defendant PAUL TERRY NICHOLS, knowingly and intentionally manufactured a quantity of methamphetamine, that is, approximately forty (40) ounces of methamphetamine, a Schedule II narcotic drug controlled substance.

COUNT THIRTEEN

[21 U.S.C. § 841(a)(1)]

In or about February 1983, in San Bernardino County, within the Central District of California, defendant PATRIC HENRY STEWART, knowingly and intentionally possessed with intent to distribute a quantity of methamphetamine, that is, approximately four (4) pounds of methamphetamine, a Schedule II narcotic drug controlled substance.

- 26 -

COUNT FOURTEEN

[21 U.S.C. § 841(a)(1)]

In or about February 1983, in San Bernardino County, within the Central District of California, defendant PAUL TERRY NICHOLS, knowingly and intentionally possessed with intent to distribute a quantity of methamphetamine, that is, approximately two (2) pounds of methamphetamine, a Schedule II narcotic drug controlled substance.

- 27 -

## COUNT FIFTEEN

[21 U.S.C. § 841(a)(1)]

In or about March 1983, in San Bernardino County, within the Central District of California, defendant PAUL TERRY NICHOLS, knowingly and intentionally manufactured a quantity of methamphetamine, that is, approximately forty (40) ounces of methamphetamine, a Schedule II narcotic drug controlled substance.

- 28 -

COUNT SIXTEEN

[21 U.S.C. § 841(a)(1)]

In or about March 1983, in San Bernardino County, within the Central District of California, defendant PAUL TERRY NICHOLS, knowingly and intentionally manufactured a quantity of methamphetamine, that is, approximately forty (40) ounces of methamphetamine, a Schedule II narcotic drug controlled substance.

- 29 -

COUNT SEVENTEEN

[21 U.S.C. § 841(a)(1)]

In or about March 1983, in San Bernardino County, within the Central District of California, defendant PAUL TERRY NICHOLS, knowingly and intentionally manufactured a quantity of methamphetamine, that is, approximately forty (40) ounces of methamphetamine, a Schedule II narcotic drug controlled substance.

- 30 -

COUNT EIGHTEEN

[21 U.S.C. § 841(a)(1)]

In or about June 1983, in San Bernardino County, within the Central District of California, defendants PAUL TERRY NICHOLS and PATRIC HENRY STEWART, knowingly and intentionally distributed a quantity of methamphetamine, that is, approximately eighteen (18) ounces of methamphetamine, a Schedule II narcotic drug controlled substance.

- 31 -

COUNT NINETEEN

[18 U.S.C. § 1952]

In or about June 1983, defendant PATRIC HENRY STEWART traveled in interstate commerce between Apple Valley, California, San Bernardino County, in the Central District of California, and Maplewood, Minnesota, with the intent to promote, manage, establish, carry on and facilitate an unlawful activity, namely narcotics trafficking, and thereafter promoted and facilitated that unlawful activity.

- 32 -

COUNT TWENTY

[21 U.S.C. § 841(a)(1)]

In or about October 1983, in San Bernardino County, within the Central District of California, defendant PAUL TERRY NICHOLS, knowingly and intentionally manufactured a quantity of methamphetamine, that is, over 100 ounces of methamphetamine, a Schedule II narcotic drug controlled substance.

- 33 -

COUNT TWENTY-ONE

[21 U.S.C. § 841(a)(1)]

In or about October 1983, in San Bernardino County, within the Central District of California, defendants PAUL TERRY NICHOLS KAREN NICHOLS and PATRIC HENRY STEWART, knowingly and intentionally possessed with intent to distribute a quantity of methamphetamine, that is, over 100 ounces of methamphetamine, a Schedule II narcotic drug controlled substance.

- 34 -

COUNT TWENTY-TWO

[21 U.S.C. § 841(a)(1)]

In or about January 1984, in San Bernardino County, within the Central District of California, defendant PAUL TERRY NICHOLS knowingly and intentionally manufactured a quantity of methamphetamine, that is, approximately 700 ounces of methamphetamine, a Schedule II narcotic drug controlled substance.

- 35 -

COUNT TWENTY-THREE

[21 U.S.C. § 841(a)(1)]

In or about January 1984, in San Bernardino County, within the Central District of California, defendants PAUL TERRY NICHOLS, KAREN NICHOLS and PATRIC HENRY STEWART knowingly and intentionally possessed with intent to distribute a quantity of methamphetamine, a Schedule II narcotic drug controlled substance.

- 36 -

## COUNT TWENTY-FOUR

### [21 U.S.C. § 841(a)(1)]

In or about March 1984, in San Bernardino County, within the Central District of California, defendant PAUL TERRY NICHOLS knowingly and intentionally manufactured a quantity of methamphetamine, that is, approximately 1,200 ounces of methamphetamine, a Schedule II narcotic drug controlled substance.

COUNT TWENTY-FIVE

[21 U.S.C. § 841(a)(1)]

In or about March 1984, in San Bernardino County, within the Central District of California, defendants PAUL TERRY NICHOLS and KAREN NICHOLS knowingly and intentionally possessed with intent to distribute a quantity of methamphetamine, that is, over 100 ounces of methamphetamine, a Schedule II narcotic drug controlled substance.

- 38 -

COUNT TWENTY-SIX

[26 U.S.C. § 7201]

On or about the 20th day of August, 1984, in the Central District of California, defendant PAUL TERRY NICHOLS, a resident of San Bernardino County, willfully and knowingly attempted to evade and defeat a large part of the income tax due and owing by him to the United States for the calendar year 1983, by doing and causing the preparation, signing and mailing, in the Central District of California, of a false and fraudulent income tax return, which was filed with the Internal Revenue Service, wherein defendant PAUL TERRY NICHOLS stated that his taxable income for said calendar year was $87,453.00 and that the amount of income tax due and owing thereon was the sum of $18,795.00, whereas, as defendant PAUL TERRY NICHOLS then and there well knew, his taxable income for said calendar year was approximately $334,333.00 upon which defendant PAUL TERRY NICHOLS owed to the United States an income tax of $125,525.00.

- 39 -

COUNT TWENTY-SEVEN

[26 U.S.C. § 7201]

On or about the 15th day of April, 1985, in the Central District of California, defendant PAUL TERRY NICHOLS, a resident of San Bernardino County, willfully and knowingly attempted to evade and defeat a large part of the income tax due and owing by him to the United States for the calendar year 1984, by doing and causing the preparation, signing and mailing, in the Central District of California, of a false and fraudulent income tax return, which was filed with the Internal Revenue Service, wherein defendant PAUL TERRY. NICHOLS stated that his taxable income for said calendar year was $92,568.00 and that the amount of income tax due and owing thereon was the sum of $24,080.00, whereas, as defendant PAUL TERRY NICHOLS then and there well knew, his taxable income for said calendar year was approximately $276,304.29 upon which defendant PAUL TERRY NICHOLS owed to the United States an income tax of $119,552.00.

- 40 -

COUNT TWENTY-EIGHT

[26 U.S.C. § 7201]

On or about the 27th day of September, 1984, in the Central District of California, defendant PATRIC HENRY STEWART, a resident of San Bernardino County, willfully and knowingly attempted to evade and defeat a large part of the income tax due and owing by him to the United States for the calendar year 1983, by doing and causing the preparation, signing and mailing, in the Central District of California, of a false and fraudulent income tax return, which was filed with the Internal Revenue Service, wherein defendant PATRIC HENRY STEWART stated that his taxable income for said calendar year was $-0- and that the amount of income tax due and owing thereon was the sum of $-0-, whereas, as defendant PATRIC HENRY STEWART then and there well knew, his taxable income for said calendar year was approximately $192,406.00 upon which defendant PATRIC HENRY STEWART owed to the United States an income tax of $80,568.00.

- 41 -

COUNT TWENTY-NINE

[26 U.S.C. § 7201]

On or about the 15th day of April, 1985, in the Central District of California, defendant PATRIC HENRY STEWART, a resident of San Bernardino County, willfully and knowingly attempted to evade and defeat the income tax due and owing by him to the United States for the calendar year 1984, by failing to report on an income tax return with the Internal Revenue Service, taxable income for said calendar year in the amount of approximately $114,337.00 upon which defendant PATRIC HENRY STEWART owed to the United States an income tax of $47,869.00.

- 42 -

COUNT THIRTY

[26 U.S.C. § 7201]

On or about the 15th day of April, 1984, in the Central District of California, defendant MICHAEL FRANCIS BREOR, a resident of San Bernardino County, willfully and knowingly attempted to evade and defeat the income tax due and owing by him to the United States for the calendar year 1983, by failing to report on an income tax return with the Internal Revenue Service, taxable income for said calendar year in the amount of approximately $25,462.00 for which defendant MICHAEL FRANCIS BREOR owed to the United States an income tax of $4,054.00.

## COUNT THIRTY-ONE

### [26 U.S.C. § 7201]

On or about the 15th day of April, 1985, in the Central District of California, defendant MICHAEL FRANCIS BREOR, a resident of San Bernardino County, willfully and knowingly attempted to evade and defeat the income tax due and owing by him to the United States for the calendar year 1984, by failing to report on an income tax return with the Internal Revenue Service, taxable income for said calendar year in the amount of approximately $525,294.00 for which defendant MICHAEL FRANCIS BREOR owed to the United States an income tax of $227,958.00.

A TRUE BILL

_____

Foreperson

ROBERT C. BONNER
United States Attorney


ROBERT L. BROSIO
Assistant United States Attorney
Chief, Criminal Division

- 44 -

Exhibit O

Exhibit D

( **D** )

1
2
3
4
5
6
7            UNITED STATES DISTRICT COURT

8       FOR THE CENTRAL DISTRICT OF CALIFORNIA

9            June 1987      Grand Jury

10 UNITED STATES OF AMERICA,     )   NO. CR 87-709

11          Plaintiff,      )   I N D I C T M E N T

12           v.             )   [26 U.S.C. § 5861(d);
                         )   Possession of An

13 PATRIC HENRY STEWART,       )   Unregistered Firearm;
                         )   Forfeiture of An Unregistered

14           Defendant.      )   Firearm]

15                             )

16       The Grand Jury charges:

17                  COUNT ONE

18             [26 U.S.C. § 5861(d)]

19      On or about May 14, 1986, in San Bernardino County within the

20 Central District of California, defendant PATRIC HENRY STEWART

21 knowingly possessed a firearm, that is, an Action Arms Ltd.,

22 I.M.I. Uzi, 9mm rifle, serial number SA13733, nine (9) inch

23 barrel length, which had not been registered to him in the

24 National Firearms Registration and Transfer Record as required by

25 Chapter 53, Title 326, United States Code; in violation of Title

26 26, United States Code, Section 5861(d) and 5871.

27   GGbzb

28

1    The Grand Jury further alleges that the property in question,

2  to wit, an Action Arms Ltd., I.M.I. Uzi, 9mm, serial number

3  SA13733, nine (9) inch barrel length, is subject to forfeiture

4  pursuant to the provisions of Title 26, United States Code,

5  Section 5872.

6                                    A TRUE BILL

7

8                                    _____

9                                    Foreperson

10
    ROBERT C. BONNER
11  United States Attorney

12

13  ROBERT L. BROSIO
    Assistant United States Attorney
14  Chief, Criminal Division

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    ### CERTIFICATE OF SERVICE BY MAIL

2    I, ___Bernadette Baskerville___, declare:

3    That I am a citizen of the United States and resident or
4    employed in Los Angeles County, California; that my business
5    address is Office of United States Attorney, United States
6    Courthouse, 312 North Spring Street, Los Angeles, California
7    90012; that I am over the age of eighteen years, and am not a
8    party to the above-entitled action;

9    That I am employed by the United States Attorney for the
10   Central District of California who is a member of the Bar of the
11   United States District Court for the Central District of
12   California, at whose direction the service by mail described in
13   this Certificate was made; that on ___January 8, 1988___, I
14   deposited in the United States mails in the United States
15   Courthouse at 312 North Spring Street, Los Angeles, California, in
16   the above-entitled action, in an envelope bearing the requisite
17   postage, a copy of  MOTION FOR LOW-NUMBER ASSIGNMENT; MEMORANDUM
     OF POINTS AND AUTHORITIES; DECLARATION; EXHIBITS
18

19   addressed to:   SEE ATTACHED

20

21   at _their_ last known address, at which place there is a delivery
22   service by United States mail.

23   This Certificate is executed on _January 8, 1988_ at
24   Los Angeles, California.

25   I certify under penalty of perjury that the foregoing is true
26   and correct.

27

28                                    _Bernadette Baskerville_

## SERVICE LIST

Elsa Leyva
Deputy Federal Public Defender
1500 U.S. Courthouse
312 North Spring Street
Los Angeles, California 90012

Donald C. Randolph, Esq.
2566 Overland Avenue
Suite 700
Los Angeles, California 90064

Michael Pancer, Esq.
Home Federal Building
Suite 1135
625 Broadway
San Diego, California